IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: : | |
| : | CASE NO. 1-06-bk-00051 |
| **BLACK, DAVIS & SHUE AGENCY, INC.** : | |
| Debtor : | CHAPTER 11 |
| : | |
| : | ADV. NO. 1-06-ap-00098 |
| : | |
| : | |
| **BLACK, DAVIS & SHUE AGENCY, INC.** : | |
| Plaintiff : | |
| : | |
| v. : | |
| : | |
| **EASTERN ALLIANCE INSURANCE GROUP** : | |
| **t/a EASTERN ALLIANCE INSURANCE** : | |
| **COMPANY, ALLIED EASTERN INDEMNITY** : | |
| **and EMPLOYERS ALLIANCE, INC.** : | |
| Defendant : | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

*a. Findings of Fact*

Before the Court is the Complaint filed on June 13, 2006, by Black, Davis & Shue Agency, Inc. ("BDS" or "Debtor") seeking a temporary restraining order ("TRO"), preliminary injunction and permanent injunction. An order was entered on June 15, 2006 denying the request for a TRO and a hearing was set on the motion for a preliminary injunction on June 16, 2006. At the hearing the parties agreed to a stipulated order entered by the Court on June 19, which provided, *inter alia*, that the parties would negotiate a final agreement or appear at an adjourned hearing on June 26, 2006. On June 26, a supplemental order was entered upon consent of the parties extending the terms of the June 19 order until further hearing. On or about the same date, BDS requested a hearing to be set on its request for injunctive relief. A hearing

was held at which testimony was taken on June 29 and 30 and July 7, 2006.  Having considered the written submissions and arguments of counsel and the testimony of witnesses, this Court makes the following Finding of Facts and Conclusions of Law.

1. BDS filed a petition under chapter 11 of the Bankruptcy Code on January 26, 2006.

2. At the time the petition was filed, BDS was a party to an Alternative Market Agency Agreement ("Agency Agreement") between it and Eastern Alliance Insurance Group ("Eastern Alliance"), formerly known as Educators Alliance Insurance Company.  The Agency Agreement authorized BDS to "solicit, submit and service policies of insurance" for an alternative market insurance program known as Pennsylvania Alliance Company, Ltd. Rent-A-Captive Program ("PAC Program") for which Eastern Alliance served as the fronting insurance carrier.  The PAC Program was created to provide workers compensation coverage to the participants in the Program.

3. On April 26, 2002, Eastern Re Ltd, SPC ("Eastern Re"), a company organized under the laws of the Cayman Islands, and PAC Group, LTD (the "PAC Group"), entered into an Amended and Restated Shareholder Agreement ("Shareholder Agreement") whereby Eastern Re would maintain a segregated insurance portfolio on behalf of the PAC Group.  Pursuant to the Shareholder Agreement, Eastern Re entered into reinsurance agreements with Eastern Alliance for policies issued to the seventeen business members of the PAC Group, including BDS.

4. At a meeting in March 2006, Eastern Alliance notified the president of the PAC Group board, Robert Zenzinger, that Eastern Re was terminating the PAC Program and Eastern Alliance was terminating the agency agreement for the PAC Program with BDS.

2

5. On March 7, 2006, Eastern Alliance notified BDS that because Debtor had filed a petition in bankruptcy, it was terminating the Agency Agreement effective immediately.

6. On March 27, 2006, Eastern Re notified the PAC Group that it was terminating the Shareholder Agreement effective June 29, 2006. The notice also stated that Eastern Alliance would be issuing a notice of cancellation or non-renewal to each PAC Group member before April 29, 2006.

7. Notice of cancellation or non-renewal was issued to the members of the PAC Group on April 11, 2006, with "agency termination" given as the reason for non-renewal of the policy. The notice was later rescinded and the PAC Group members were advised that the PAC Program had been terminated by Eastern Re and that Eastern Alliance was offering to provide workers compensation coverage "directly, with no involvement by any captive insurance program." The notice further stated that Eastern Alliance was barred from terminating the Agency Agreement with BDS.

8. After being notified by counsel for BDS that post-petition termination of the agency agreement on the basis that Debtor had filed a bankruptcy petition was in violation of 11 U.S.C. § 362(a), Eastern Alliance asserted that, alternatively, the Agency Agreement was being terminated under a provision that authorized unilateral termination of the agreement by either party upon ninety days notice. Eastern Alliance acknowledged that termination of the agreement would require the approval of the bankruptcy court.

9. On May 25, 2006, the Pennsylvania Insurance Department (the "Insurance Department") informed Eastern Alliance that the agency was reviewing the termination of BDS.

3

10. In a subsequent letter dated June 6, 2006, the Insurance Department requested a copy of the rehabilitation plan for BDS and stated that "any policies of this agency cannot be terminated, except for reasons permitted in the appropriate statutes that govern the terminations."

11. The stipulated Order signed by the Court on June 19, 2006, provided that the Agency Agreement would remain in place through June 30, 2006; that Eastern Alliance would provide quotes to BDS for all accounts in the PAC Group by June 19, 2006; that Eastern Alliance would have no contact with the PAC Group members except to rescind the non-renewal letter (this provision was later modified to authorize contacts to service claims); that if the PAC Program were renewed or a similar program instituted, BDS would be the exclusive broker through June 30, 2007; that all other rights and claims were reserved; and that a final agreement would be crafted by June 26, 2006 or the parties would appear for a hearing on that date.

12. Eastern Alliance did not have direct contact with the PAC Group members, but other agents for Eastern Alliance contacted the members offering to provide quotes for traditional Eastern Alliance policies.

13. On at least one occasion, Eastern Alliance failed to provide BDS with a copy of a new Agent of Record notice executed by a former member of the PAC Group.

14. Debtor seeks an order requesting the following relief:

a. maintenance of the Agency Agreement;

b. maintenance of the PAC Program with Eastern Alliance continuing to offer coverage to the PAC Group members with BDS as broker effective 30 days from the date of the Court's order;

c. a hearing on damages if the PAC Group members opt not to remain in the PAC Program; and

       d.       interim damages of $5000.00 per month for loss of commissions.

       *b.*       *Conclusions of Law*

A preliminary injunction is appropriate only in extraordinary circumstances. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*., 290 F.3d 578, 586 (3d Cir. 2002)(citations omitted). Plaintiffs seeking injunctive relief have the burden of showing both that "(1) they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits. A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require. If relevant, the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest." *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 485 (3d Cir. 2000)(citations omitted).

The foregoing factual findings clearly establish that Eastern Alliance violated the automatic stay by terminating the Agency Agreement without obtaining approval from this Court. *In re Tudor Motor Lodge Associates, L.P.,* 102 B.R. 936, 948-51 (Bankr. D. N.J. 1989)(post-petition efforts to terminate an executory contract violates automatic stay). Therefore, BDS has shown a reasonable probability of success on the merits as to this aspect of its requested relief. Its request for reconstitution of the PAC Program is more problematic, however.

BDS has requested the Court to "maintain" the PAC Program with Eastern Alliance. However, at this juncture, there is nothing to maintain. In reality, Debtor is asking the Court to direct that the PAC Program be revived and that Eastern Alliance be required to provide insurance to the PAC Group members with BDS as broker. A party seeking a mandatory preliminary injunction that alters the status quo bears a heavy burden in establishing the

necessity for the relief. *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir. 1994) *citing Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). It is undisputed that the restoration of the Agency Agreement is of little benefit to BDS if the PAC Program does not exist. Debtor's only agency relationship with Eastern Alliance was through the Program. However, the PAC Program was created under the terms of the Shareholder Agreement entered into by Eastern RE and the PAC Group; the Debtor is not a party to this agreement. Eastern Re terminated the Shareholder Agreement after BDS filed for bankruptcy relief, but this action was not taken in violation of the stay since the Shareholder Agreement is not property of the estate.[1] Further, although BDS is an indirect beneficiary of the PAC Program through the commissions on policies sold to the PAC Group members, not every arrangement that affects a debtor's business operations is subject to the automatic stay. Therefore, it is unlikely that Debtor will be successful in forcing reinstatement of the PAC Program.

BDS also is required to demonstrate that it will suffer irreparable harm if the injunction is not issued. Eastern Alliance has conceded that its termination of the Agency Agreement was improper, and it has agreed to take no further action pending the proceedings before the Insurance Department. Therefore, an injunction to prohibit the termination of the Agency Agreement is unnecessary. As to the PAC Program, BDS has failed to demonstrate the existence

---

[1] BDS offered evidence that Eastern Alliance caused Eastern Re to terminate the PAC Program because Eastern Alliance was stymied in its efforts to terminate the Agency Agreement. Debtor introduced a series of e-mails in which the agents of another broker, AIA, gleefully discussed the rivalry between the agencies and celebrated their ability to take business from BDS. BDS has argued that the termination of the PAC Group was merely a ruse used to circumvent the automatic stay. Although the Court agrees that dissolution of the PAC Program appears not to have been Eastern Alliance's original intention and substitution of a new broker for BDS was a possible alternative goal, dissolution of the PAC Program was effected and, thus, was not merely a ruse.

6

of irreparable harm in addition to its failure to establish the likelihood of success on the merits. Irreparable harm exists when monetary damages will not suffice, and a preliminary injunction is the only way of protecting the plaintiff's interests. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989); *Frank's GMC Truick Center, Inc. v. G.M.C.,* 847 F.2d 100, 102 (3d Cir. 1988); *Continental Group, Inc. v. Amoco Chemicals Corp*. 614 F.2d 351, 356 (3d Cir. 1980). A plaintiff must prove a "clear showing of immediate irreparable injury," not just a risk of harm. *Ecri v. McGraw-Hill, Inc*. 809 F.2d 223, 226 (3d Cir. 1987)(citations omitted). Debtor has failed to demonstrate that it will be irreparably harmed if the Agency Agreement is terminated and the PAC Program is not reinstituted. Although the loss of premiums payable to BDS through the PAC Program will adversely affect Debtor, no proof was offered that BDS will be unable to reorganize unless it is able to serve as the broker for these accounts. Recovery of any commissions that BDS is able to prove it lost as a result of the termination of its agency relationship with Eastern Alliance in violation of the automatic stay will be adequate to compensate BDS for the pecuniary harm it has suffered.

Even if termination of the PAC Program would be fatal to Debtor's reorganization efforts, 11 U.S.C. § 105(a) does not authorize this Court to enjoin the exercise of contractual rights between parties who are not named defendants and have not violated the automatic stay when the debtor is not a party to the contract. The only named defendant in this matter is Eastern Alliance. Neither Eastern Re nor the PAC Group were named as defendants. The termination of the PAC Program was effectuated by Eastern Re notifying the PAC Group that it was exercising its rights under the Shareholders Agreement. BDS is not a party to the Shareholders Agreement and has no standing to object to its termination.

Debtor's inability to demonstrate the likelihood of success on the merits and the existence of irreparable harm to its interests is fatal to its Complaint. However, BDS also has failed to convince the Court that it could meet the other factors as well. When considering whether to grant injunctive relief I also must balance the respective hardships between BDS and Eastern Alliance as well as the public interest. The balance of the hardship between BDS and Eastern Alliance is not determinative, but the injunctive relief sought by Debtor will impact not only Eastern, but sixteen other unrelated businesses. Debtor is asking the Court not only to reinstate the PAC Group, but also to terminate replacement coverage that the PAC Group members have obtained and, by implication, require some other party to refund the premiums. This process will create further uncertainty for these businesses that have been caught in the cross hairs of this dispute. Further, even if the PAC Program was reinstituted, it is uncertain whether the PAC Program insurer, Eastern Re, can obtain reinsurance from Lloyds of London, a necessary component of the Program. Therefore, the complaint for injunctive relief will be denied. An appropriate order follows.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: July 11, 2006

*This document is electronically signed and filed on the same date.*