IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| BLACK, DAVIS & SHUE AGENCY, INC., | * | |
| Debtor | * | |
| | * | |
| BLACK, DAVIS & SHUE AGENCY, INC., | * | CASE NO. 1:06-bk-00051MDF |
| Plaintiff | * | |
| | * | |
| vs. | * | ADV. NO. 1:-06-ap-00098 |
| | * | |
| EASTERN ALLIANCE INSURANCE GROUP T/A EASTERN ALLIANCE INSURANCE COMPANY, ALLIED EASTERN INDEMNITY COMPANY AND EMPLOYERS ALLIANCE, INC., | * | |
| Defendants | * | |

**OPINION**

Before me is the motion of Black Davis & Shue ("BDS") seeking reconsideration of my February 7, 2008 Order awarding BDS actual and punitive damages against Eastern Alliance Insurance Group ("Eastern Alliance") because Eastern Alliance had terminated an executory contract (hereinafter the "Agency Agreement") with BDS in violation of the automatic stay. For the reasons that follow, the motion for reconsideration will be denied.[1]

**Factual and Procedural History**

BDS filed a petition under chapter 11 of the Bankruptcy Code on January 26, 2006. At that time, BDS was authorized under the Agency Agreement to solicit, submit and service policies of workers' compensation insurance for an alternative market insurance program known

---

[1] On July 11, 2006, I issued an Opinion denying a motion by BDS to enjoin the termination of the Agency Agreement. The findings of fact, conclusions of law and discussion contained within that Opinion and the February 7, 2008 Opinion are incorporated herein by reference.

as Pennsylvania Alliance Company, Ltd. Rent-A-Captive Program ("PAC"), for which Eastern Alliance served as the fronting insurance carrier. In turn, Eastern Re Ltd, SPC ("Eastern Re"), a company organized under the laws of the Cayman Islands, entered into reinsurance agreements with Eastern Alliance for the policies issued to the members of the PAC Program.

In March 2006, Eastern Alliance verbally notified the PAC Program members that because BDS had filed for bankruptcy, it was terminating the Agency Agreement, and because the Agency Agreement was being cancelled, Eastern Re was terminating the PAC Program. On March 7, 2006, Eastern Alliance provided written notification to BDS that it was terminating the Agency Agreement effective immediately because of the bankruptcy filing. On May 9, 2006, Eastern Alliance revised the notice of termination to BDS to state that it was also invoking the provision in the Agency Agreement that gave either party the right to terminate upon ninety days written notice. After the PAC Program was terminated, Eastern Re established new re-insurance agreements with some of the former members of the PAC Program, but with American Insurance Administrators ("AIA"), and not BDS, acting as broker.

On June 13, 2006, BDS filed the instant adversary case seeking a temporary and permanent injunction barring termination of the Agency Agreement and restoring the PAC Program with BDS as broker. BDS also sought damages for Eastern Alliance's violation of the automatic stay and for the intentional interference with contractual relations. On July 11, 2006, I issued an Opinion in which I found no basis on which to order an injunction in light of the fact that the PAC Program had already been terminated and its members forced to obtain insurance elsewhere, thus precluding the Program from being reconstituted. I found that, with no Program to serve, an injunction barring termination of the Agency Agreement between Eastern Alliance

2

and BDS would be pointless. I found that Eastern Re's termination of the agreement creating the PAC Program was not a violation of the stay because that agreement was not property of the estate. However, Eastern Alliance's termination of the Agency Agreement did violate the stay. Therefore, the case proceeded to trial solely to allow BDS to present evidence of damages stemming from the termination of the Agency Agreement.

BDS now seeks reconsideration of the Order and Opinion entered February 7, 2008. In the Opinion, I concluded that the evidence adduced by BDS at trial proved actual damages of $38, 577.99 and punitive damages of $20,000.00. I further concluded, however, that much of BDS's evidence was offered to prove damages stemming from termination of the PAC Program, which termination I previously had found not to have violated the stay. Therefore, I denied damages based on that evidence.

The parties filed briefs on reconsideration and the matter is ready for decision.[2]

**Discussion**

A motion for reconsideration constitutes a motion under Rule 9023 of the Federal Rules of Bankruptcy Procedure. *Prudential Ins. Co. v. Farley (In re Farley)*, 158 B.R. 48, 52 (E.D. Pa. 1993). Bankruptcy Rule 9023 provides that "Rule 59 [of the Federal Rules of Civil Procedure] applies in cases under the Code, except as provided in Rule 3008." Fed. R. Bankr.P. 9023. A motion for reconsideration is governed by Fed. R. Civ. Pro 59(e), which authorizes a party to move to alter or amend a judgment within ten days of its entry. *McDowell Oil Serv., Inc. v.*

---

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

3

*Interstate Fire & Cas. Co.,* 817 F.Supp. 538, 541 (M.D. Pa. 1993). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002) (quoting *Abu-Jamal v. Horn*, 2001 U.S. Dist. LEXIS 20813, No. 99-5089, 2001 WL 1609761, at *9 (E.D.Pa. Dec.18, 2001) (citations and internal quotation marks omitted)).

As indicated above, BDS seeks reconsideration of my refusal to award compensatory damages based on evidence of damages stemming from the dissolution of the PAC Program. BDS argues that "[t]he result of Eastern Alliance's actions to terminate the Agency Agreement and the PAC [Program] was the substitution of its selected agent (AIA) and the continuing business relationship with the majority of the companies" who had been in the PAC Program. BDS then quotes my February 7, 2008 Opinion for its statement that Eastern Alliance " worked in concert with AIA to induce participants in the PAC Group to violate the stay by terminating their broker agreements with BDS and substituting AIA." (Opinion at p.12). It argues that this

4

statement necessitates a conclusion that Eastern Alliance violated the stay in BDS's bankruptcy case through its role in the dissolution of the PAC Program. However, as I also found,

> [i]n prosecuting this matter, BDS asserted that Eastern Re's termination of the PAC Program was a pretext enabling Eastern Alliance to eliminate BDS so that it could direct business to a different insurance broker. To substantiate its allegations, BDS was required to prove *that Eastern Re was an alter ego of Eastern Alliance* and that the PAC Program was reconstituted in some other form and later serviced by another insurance agency. The evidence offered failed to substantiate BDS's argument and substantiated Eastern Alliance's assertion that the termination of the PAC was a legitimate business decision *made by Eastern Re.*

Opinion, p. 8 (italics added). Because BDS failed to prove that Eastern Re was an alter ego of Eastern Alliance such that a decision by the former was effectively a decision by the latter, BDS failed to show that it incurred damages as a result of Eastern Re's termination of the PAC. Therefore, even though Eastern Alliance worked in concert with AIA to replace BDS as broker, the proximate cause of Debtor's lost commissions was not the termination of the agency agreement, but rather was a consequence of the legitimate business decision made by Eastern Re to terminate the PAC Program.

As an additional basis for reconsideration, BDS argues that "[a]warding punitive damages without establishing the underlying actual damages is an abuse of discretion." This argument is devoid of factual merit – underlying actual damages were established and awarded in the amount of $38,577.99.

The final basis for reconsideration asserted by BDS is that the Court erred in failing to award the full amount of professional fees requested in its case for damages. BDS offers no new evidence or argument in support of this assertion other than that all the work performed by the professionals representing BDS was intended to "preserve the status of the debtor [and] was an

5

appropriate step to be taken to attempt to preserve the business relationships between [BDS] and its customers . . . ." (Motion for Reconsideration, ¶ 8). Again, my February 7, 2008 Opinion examined the professional activities that formed the basis for the requested fees and found that some of those activities were undertaken to prove damages from termination of the PAC Program and not to prove damages from termination of the Agency Agreement. Since damages resulting from termination of the Agency Agreement were the only damages authorized by § 362, an award based on the professionals' work unrelated to that termination was not appropriate. In seeking the full amount of professional fees requested, the reconsideration motion seeks to reargue matters already argued and disposed of, and it asserts no intervening change in the law, no evidence that was not available on February 7, 2008 and no need to correct a clear error of law or fact or to prevent manifest injustice. *See Max's Seafood, Ogden, supra.* Accordingly, BDS's final argument for reconsideration fails.

For the reasons discussed above, the motion for reconsideration will be denied. An appropriate order will be entered.

By the Court,

*[signature]*
Mary D. France
Bankruptcy Judge

Date: August 27, 2008

*This document is electronically signed and filed on the same date.*